UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

**MARY B. MORGAN**                                                                                       **PLAINTIFF**

v.                                      **Civil No. 4:17-cv-04021**

**NANCY A. BERRYHILL, Commissioner**                                                **DEFENDANT**
**Social Security Administration**

## MEMORANDUM OPINION

Mary B. Morgan ("Plaintiff") brings this action under 42 U.S.C. § 205(g) pursuant to §205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C §405(g) (2010), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("SSA") denying her applications for Supplemental Security Income ("SSI"), Disability Insurance Benefits ("DIB"), and a period of disability under Titles II and XVI of the Act.

The Parties have consented to the jurisdiction of a magistrate judge to conduct all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. ECF No. 5.[1] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1.      Background:**

On March 11, 2014, the Plaintiff protectively filed her applications. (Tr. 208, 229-231). In her applications, Plaintiff alleges she was disabled due to carpal tunnel syndrome, spinal

---

[1] The docket numbers for this case are referenced by the designation "ECF No. ____" The transcript pages for this case are referenced by the designation "Tr. ___"

arthritis, and high blood pressure beginning September 11, 2013. (Tr. 241). These claims were denied initially on May 1, 2014, and upon reconsideration on August 26, 2014. (Tr. 143, 155).

Thereafter, Plaintiff filed a written request for hearing on her application and this application was granted. (Tr. 157, 172). An administrative hearing was held on December 9, 2015, in Texarkana, Arkansas. (Tr. 81,172). At the administrative hearing, Plaintiff was present and was represented by counsel, Greg Giles. (Tr. 81). Plaintiff and Vocational Expert ("VE") Juanita Grant testified at this hearing. *Id*. On the date of this hearing, Plaintiff testified she was sixty (60) years old, which is defined as a "person of advanced age" under 20. C.F.R. § 416.963(e). (Tr. 86).

On March 28, 2016, the ALJ entered an unfavorable decision on Plaintiff's disability applications. (Tr. 66). In this decision, the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2017. (Tr. 71, Finding 1). The ALJ found Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since September 11, 2013, her alleged onset date. (Tr. 71, Finding 2). The ALJ determined Plaintiff had the following severe impairments: carpal tunnel syndrome, bilateral, and degenerative disc disease. (Tr. 71-72, Finding 3). The ALJ, however, also determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 72, Finding 4).

In this decision, the ALJ evaluated Plaintiff's subjective complaints and determined her RFC. (Tr. 72-75, Finding 5). First, the ALJ evaluated Plaintiff's subjective complaints and determined they were not entirely credible. *Id*. Second, the ALJ determined Plaintiff retained the RFC for the following:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(a) and 416.967(b) except she can occasionally stoop and crouch and should not be required to perform manipulative functions continually.
> *Id.*

The ALJ evaluated Plaintiff's Past Relevant Work ("PRW") and determined she could perform her past relevant work of supervisor in retail store, assistant manager. (Tr. 75, Finding 6). The ALJ concluded Plaintiff had not been under disability under the Act from September 11, 2013 through the date of his decision. (Tr. 75, Finding 7).

Plaintiff requested the Appeals Council review the ALJ's unfavorable disability determination. (Tr. 65). On March 17, 2017, the Appeals Council declined to review the ALJ's disability determination. (Tr. 1-4). Plaintiff filed the present appeal on April 6, 2017. ECF No. 1. The Parties consented to the jurisdiction of this Court on April 7, 2017. ECF No. 5. Both Parties have filed appeal briefs. ECF Nos. 11-12. This case is now ready for decision.

**2.** **Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. §405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents

the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. §423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. § 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

3. **Discussion:**

In her appeal brief, Plaintiff alleges her case should be reversed and remanded for immediate award of benefits for the following reasons: (A) the ALJ did not properly consider Plaintiff's disabilities under the listings; (B) the ALJ erred in his determination assigning the weight of the evidence; (C) the ALJ erred in the RFC assessment, and (D) the ALJ failed to properly pose a question to the vocational expert.

A. **ALJ's Evaluation of the Listings**

Plaintiff argues the ALJ erred by failing to determine that Plaintiff's impairments met a listing of Impairments pursuant to 20 CFR Part 404, Subpart P, Appendix 1.

The burden remains with the Plaintiff to establish that her impairment meets or equals an impairment enumerated in the listings. *See Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004); *Marciniak v. Shalala*, 49 F.3d 1350, 1353 (8th Cir. 1995); 20 C.F.R. §§ 404.1520, 416.920. The issue as to whether a plaintiff meets or equals a listing is a medical determination. *Cockerham v. Sullivan*, 895 F.2d 492, 496 (8th Cir. 1990). For a claimant to meet a listing, there must be a diagnosis of a listed impairment that is established by medically acceptable findings based on clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1525, 416.925. However, a diagnosis alone does not establish that the claimant meets a listing. *See Collins v. Barnhart*, 335 F.3d 726, 730-31 (8th Cir. 2003); 20 C.F.R. §§ 404.1525(d), 416.925(d). Plaintiff must show that she meets all of the specific criteria for the listed impairment. *See Johnson*, 390 F.3d at 1070; *Marciniak*, 49 F.3d at 1353; 20 C.F.R. §§ 404.1525(d), 416.925(d). Further, to meet her burden of proof of showing medical equivalence, "a claimant must . . . present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Johnson*, 390 F.3d at 1070 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)); 20 C.F.R. §§ 404.1526(a), 416.926(a).

i      <u>Listing 1.02</u>

Listing 1.02(A) requires evidence of:

A major joint dysfunction characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s); and

A. Involvement of one major peripheral weight bearing joint (i.e. hip, knee, or ankle) resulting in an inability to ambulate effectively, as defined in 1.00(B)(2)(b);

or

B. Involvement of one major peripheral joint in each upper extremity, resulting in inability perform fine and gross movements effectively, as defined in 1.00B2c.

*See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02.

There is no evidence in the record of a gross anatomical deformity or chronic joint pain in any major peripheral weight bearing joint, nor is one alleged. In Plaintiff's brief the discussion referring to listing 1.02 is exclusively in reference to Plaintiff's wrist problems. (ECF No. 11, pp. 7-8). However, Plaintiff has not shown her carpal tunnel syndrome arose from a major joint dysfunction as required by this listing.

Plaintiff's argument on this issue is without merit.

ii    <u>Listing 1.04</u>

Listing 1.04 requires evidence of disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord WITH:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.

Plaintiff's argument relies heavily upon Dr. Sayre's opinion regarding the stringent limitations and conclusory opinion that the Plaintiff is unable to work. (ECF No. 11, p. 5, referencing Tr. 73-74). Dr. Sayre's opinion was given little weight by the ALJ, as Dr. Sayre's opinions were both conclusory and against the weight of the evidence as a whole. (Tr. 73-74). The ALJ's determination as to the weight to be afforded to Dr. Sayre's opinion is discussed in more detail below, and is found by the Court to be supported by substantial evidence.

The record shows Plaintiff first complained of her back popping in 2013, with Dr. Sayre ordering imaging in December of 2013. (Tr. 10). Those images were reviewed by a radiologist, Dr. Shawn Marvin, who found mild degenerative disc disease, with no acute bony abnormality and mild facet osteoarthritis. (Tr. 10).

On October 2, 2014 Plaintiff had an MRI of her lumbar spine which was interpreted by Dr. Nicholas Kremer who found congenitally short pedicles resulting in a narrow canal at baseline

and disc disease with bulging annulus at the L4-5 level resulting in moderate to severe canal stenosis as well as mild canal stenosis at L2-3 and mild right foraminal stenosis at L5-S1. (Tr. 382).

On January 23, 2016, Plaintiff was seen at the Southern Medical Group for a consultative exam. Dr. Jeremiah West, noted the Plaintiff said she has a walker for use when she goes out, but did not bring it that day. (Tr. 389). Dr. West also found Plaintiff had a negative straight leg raise test (SLR), negative FABER test, and positive tinel tests on both wrists. (Tr. 390). Dr. West assessed her gait as normal, with the ability to rise from a sitting position without assistance, stand on both tiptoes and heels, and able to bend and squat without difficulty. However, Dr. West did note difficulty with tandem gait. (Tr. 390). Dr. West's recommendations for treatment of Plaintiff's low back pain was physical therapy and pain modalities. (Tr. 391).

Plaintiff also refers to evidence dated November 2016 through January 2017, from John B. Dietze, M.D. (ECF No. 11, pp. 5-7). These records reflect appointments with and subsequent treatment by Dr. Dietze, who is a specialist Plaintiff was referred to by Dr. Sayre. (Tr. 34). The earliest records are from December, more than six months after the ALJ's decision. (Tr. 29-59). The back surgery took place on January 24, 2017, nearly nine months after the ALJ's decision. (Tr. 17). The records themselves were submitted by Plaintiff's counsel in January of 2017, nine months after the ALJ's decision. (Tr. 31). These records are not considered in evidence as the treatment happened after the relevant time period. *See* 20 C.F.R. § 416.1470(b). Thus, this new evidence may not serve a basis for remand.

Here, the medical evidence from the relevant period does n ot show a compromise of the nerve root or spinal cord; a nerve root compression characterized by neuro-anatomic distribution of pain; motor or sensory loss; positive straight leg raising; or spinal arachnoiditis. Thus, there is

no evidence Plaintiff meets listings 1.04(A) or listing 1.04(b). Nor is there sufficient evidence from the relevant period to show Plaintiff meets listing 1.04(C). Although there is some evidence of lumbar spinal stenosis during the relevant period, there is no evidence the stenosis resulted in pseudoclaudication and an inability to ambulate effectively.

The Court finds the ALJ's determination that Plaintiff did not meet the listings under Listing 1.00 was supported by substantial evidence.

### B. The ALJ Did Not Err in Assigning Weight to Opinion Evidence of Record

Plaintiff argues the ALJ erred in assigning greater weight to Dr. West's findings than Dr. Sayre's in part because the Plaintiff underwent back surgery 10 months after Dr. West's consultation. (ECF No. 11, pp. 5, 16). The ALJ did assign less weight to Dr. Sayre's opinion evidence as it was both internally inconsistent and inconsistent with the record as a whole. (ECF No. 10, p. 78). The ALJ also disregards the portions of the opinion that are conclusory in nature, as the ultimate conclusion as to whether or not a claimant meets the statutory definition of authority is specifically reserved to the Commissioner under the regulations, citing to 20 C.F.R. §§404.1527(e), 416.927(e), and Social Security Ruling 96-5p. (ECF No. 10, p. 79). The ALJ rejected those parts of Dr. Sayre's opinion, which were conclusory in nature. (ECF No. 10, p. 79). The ALJ specifically stated Dr. Sayre's opinions were considered and were used to provide insight into Plaintiff's functional ability and how her impairments affected her ability to work. (ECF No. 10, p. 79).

Plaintiff's assertion that back surgery being performed ten months later, outside the relevant time period, renders the weight the ALJ gave to Dr. West's opinion error, is misguided. The ALJ examined the evidence of record and gave greater weight to the opinions which did not

contradict themselves and the record as the whole. Additionally, as mentioned above, the back surgery took place outside of the relevant time period.

The Court finds substantial evidence supports the ALJ's decisions regarding the weight given to each source of opinion evidence.

### C. Residual Functional Capacity Analysis

Plaintiff does not make any specific claims regarding to her claim that she is unable to do light work, beyond objecting to the way that questions were posed to the vocational expert.

In making his RFC determination the ALJ considered Plaintiff's own report of her daily activities. (ECF No. 10, pp. 76-77). The ALJ also considered the medical opinions and, as discussed above, found the opinion evidence supporting more severe restrictions were not supported by the treatment records or the record as a whole. The ALJ gave greater weight to Dr. West's opinions and considered his consultative exam notes, which included negative SLR and FABER tests, and his opinion Plaintiff had no limitation in sitting, standing, walking, carrying, or lifting supported the ALJ's RFC finding. (ECF No. 10, pp. 393-395). Further, the opinions of state agency medical consultants who reviewed the evidence of record and found Plaintiff capable of light to medium work supported the ALJ's RFC finding. (ECF No. 10, pp. 106-109, 116-119, 127-132, 140-142). Finally, Plaintiff's reported activities, which included cooking, cleaning, doing laundry, washing dishes, vacuuming, making her bed, shopping, and driving, supported her ability to perform light work with postural and manipulative limitations. (ECF No. 10, pp. 95, 253-258).

Based upon the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination.

### D. Hypothetical to Vocational Expert

"The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (citing *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)). The ALJ's hypothetical question included all the limitations found to exist by the ALJ and set forth in the ALJ's RFC determination. *Id.* Based on our previous conclusion that the ALJ's RFC findings are supported by substantial evidence, we hold the hypothetical question was proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits. *Id.*, *see also* Lacroix, 465 F.3d at 889.

### 4. Conclusion:

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED** this **17th day of September 2018.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE